IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1890.

## ELIZ. S. BRICKER v. PHIL. & R. R. CO.

132    1
41SC²605

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued April 4, 1889—Decided January 6, 1890.

1 A passenger, in the legal sense of the word, is one who travels in some public conveyance by virtue of an express or implied contract with the carrier, as by the payment of a fare or by that which is accepted as the equivalent thereof : Penna. R. Co. v. Price, 96 Pa. 267.

2 When a person, not accepted as a passenger and without the knowledge of the railroad company's employees, is in a car not provided for passengers but exclusively devoted to the railway mail service, and with no right to remain there, the company is not liable for injuries received by him in a collision.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 223 January Term 1889, Sup. Ct.; court below, No. 721 June Term 1887, C. P.

On June 17, 1887, Elizabeth S. Bricker, widow of Jacob L. Bricker, suing for herself and her children, brought trespass against Stephen A. Caldwell and George deB. Keim, receivers of the Philadelphia and Reading Railroad Company, to

Statement of Facts.

recover damages for the death of her husband caused by the alleged negligence of the defendant company. Issue.

At the trial on February 8, 1888, the plaintiff produced testimony to establish the following facts: On July 2, 1886, Jacob L. Bricker took a seat in a passenger car of defendant's train from Reading to Pottsville, by the way of Port Clinton. At Port Clinton he left that train to take the defendant's train thence to Tamaqua, the latter train consisting of an engine and tender, a baggage car, a combined mail and express car, and two or more passenger cars, in the order named. He had been suffering with cholera morbus, before leaving Reading, and while en route from that place to Port Clinton. At Port Clinton, just before the starting of the train for Tamaqua, he went to the side door of the mail and express car, the second car of the train, and had a conversation with Mr. Decker, the railway postal clerk; he then went into the mail car, and, having seated himself, Mr. Decker gave him some medicine. He was apparently in pain. He was given a second dose, and two or three minutes afterward a collision occurred, in which he received injuries resulting in his death.

The distance between Port Clinton and the scene of the accident was about twenty miles, and the time taken in running that distance was some fifty minutes, the train however making several stops after leaving Port Clinton. The mail compartment was in the forward part of the combined car, and the rear part of that car was so obstructed by express matter that it was not possible to pass to the passenger cars in the rear, without alighting on the platform from the forward part of the combined car. No conductor or train hand directed Mr. Bricker to leave the combined car. No notice on behalf of the railroad company was posted, but there was posted in the mail compartment a notice in large type issued by the Post-office Department, in the following words:

" Employees of the Railway Mail Service will allow no person to remain in their offices unless duly authorized. In all cases the conductor must be notified of their presence. No excuse will be received for a violation of this order."

Between Port Clinton and the scene of the accident no conductor came to Mr. Bricker, but after his death there was found on his person a mileage commutation-book, good for

Opinion of the Court.

passage on that train, and the return coupon of an excursion ticket, the time of which had expired the day before.

At the close of the plaintiff's testimony, on motion of the defendant the court entered judgment of nonsuit, with leave, etc. Subsequently, a rule to show cause why the judgment should not be lifted was discharged, when the plaintiff took this appeal, specifying that the court erred: 1. In holding that the decedent was guilty of contributory negligence in being in the mail compartment of the baggage car, under the circumstances disclosed by the testimony. 2. In not leaving to the jury, as an issue of fact, the question of such contributory negligence. 3. In refusing to lift the judgment of nonsuit.

*Mr. C. Stuart Patterson* (with him *Mr. I. Y. Sollenberger*), for the appellant.

1. That the deceased was a passenger, and not a trespasser, counsel cited: Penna. R. Co. v. Price, 96 Pa. 267; Penna. R. Co. v. Books, 57 Pa. 339, 346; Creed v. Railroad Co., 86 Pa. 139; Lake Shore etc. Ry. Co. v. Rosenzweig, 113 Pa. 519. 2. That the circumstances and nature of the accident raised a presumption of negligence on the part of defendant: Scott v. Docks Co., 3 H. & C. 596; Western Transp. Co. v. Downer, 11 Wall. 129; Skinner v. Railway Co., 5 Exch. 787; New York etc. R. Co. v. Seybolt, 95 N. Y. 562; Spear v. Railroad Co., 119 Pa. 61; O'Donnell v. Railroad Co., 59 Pa. 239; Creed v. Railroad Co., 86 Pa. 139; Penna. R. Co. v. Langdon, 92 Pa. 21.

*Mr. Thomas Hart, Jr.*, for the appellee.

Counsel cited: Stager v. Railway Co., 119 Pa. 70; Spear v. Railroad Co. 119 Pa. 61; Duff v. Railroad Co., 91 Pa. 458; Gillis v. Railroad Co., 59 Pa. 129; Balt. & O. R. Co. v. Schwindling, 101 Pa. 258; Eaton v. Railroad Co., 57 N. Y. 382 (15 Am. Rep. 513); Gardner v. New Haven & N. Co., 51 Conn. 143 (50 Am. Rep. 12); Hoar v. Railroad Co., 70 Me. 65 (35 Am. Rep. 299).

OPINION, MR. JUSTICE McCOLLUM:

There is no evidence in this case which warrants an inference that the defendant company accepted Bricker as a pas-

Opinion of the Court.

senger on its train from Port Clinton to Tamaqua. He entered a car which he knew was not provided for the transportation of passengers. He was on the train without the knowledge or consent of the company, and in a place where its employees in the discharge of their ordinary duties would not discover him. It was a place devoted exclusively to the railway mail service, and in charge of one of its employees. He was confronted by an order of the superintendent of that service, forbidding him to remain there. He was not there for any purpose which related to a duty of the company in the transportation of its passengers or their baggage.

Upon these undisputed facts appearing in the plaintiff's evidence, no contract for safe carriage existed between the company and the deceased. A passenger, in the legal sense of the word, is " one who travels in some public conveyance, by virtue of a contract, express or implied, with the carrier, as the payment of fare or that which is accepted as an equivalent therefor: " Penna. R. Co. v. Price, 96 Pa. 256. In Wharton on Negligence, § 354, the undertaking of the carrier is thus defined: " A carrier, in undertaking to carry passengers safely, undertakes to carry them safely if they place themselves under his direction in particular places prescribed for the purpose ; and he will not be held liable for damages accruing to an interloper, who, unnoticed by him, hides in the crevices of a locomotive, or in the hold of a ship. In Patterson's Ry. Acc. Law, § 214, it is stated, " that the existence of the relation of carrier and passenger is dependent upon the making of a contract of carriage. From this it follows that railways are not liable to persons who have not been accepted as passengers, and the intention of the person to pay his fare and his good faith are immaterial, where there has been no contract, express or implied, on the part of the railway."

These quotations from standard text-books correctly state the law on the subject to which they refer. As Bricker was not a passenger, and was on the train without the consent, express or implied, of the company, it owed him no duty, and the nonsuit was rightly ordered. In this view of the case, it is unnecessary to consider whether, if he had been accepted as a passenger, he was guilty of negligence which contributed to the injury he received, and which caused his death.

Judgment affirmed.