Orcutt *v.* The Erie Indemnity Co., Appellant.

Argued April 20, 1934.

Before Trexler, P. J., Keller, Baldrige, Stadtfeld, Parker and James, JJ.

*E. V. Buckley* of *Service, McNeal and Buckley,* for appellant.

*Nathan Routman,* for appellee.

OPINION BY PARKER, J., October 3, 1934:

In this action the plaintiff sought to recover from the defendant, insurance carrier for John Mendicino, the amount of a judgment which plaintiff had recovered against Mendicino for injuries suffered while a passenger in Mendicino's car. The insurance carrier disclaimed liability under the insurance policy on the ground that at the time of the accident the plaintiff was being carried by Mendicino as a passenger for hire contrary to a provision in the policy which provided that "no liability is assumed on account of accidents occurring while the insured automobile is being operated with the consent of the insured ......
for rental, hire or livery or the carrying of passengers for a consideration."

The material facts are not in dispute, having been established by a deposition of the plaintiff corroborated by the testimony of Mendicino. On November 15, 1930, Melbourne Orcutt, the plaintiff, a painter, went to a feed store in the city of Sharon for the purpose of having the owner transport him, with some paint which he was about to use, to another point in

that city. The owner of the store was busy and could not accommodate the plaintiff, but Mendicino chanced to be present on some business and, at the request of plaintiff, carried him as requested with his paint and some small articles. When they reached their destination Orcutt asked Mendicino what the charges were and, after some conversation, paid him twenty-five cents for the trip and explained that he was going to be busy only for an hour or two and that he then desired Mendicino to haul him, with his ladders and paint, to another point. Mendicino gave Orcutt his telephone number and said if he needed him to call him up again. He did call and during the return trip and while a passenger in the car Orcutt suffered the injuries for which he recovered judgment. The compensation for the return trip was not actually paid. The following question and answer by Mendicino bear directly upon the subject: "Q. State whether or not he made an arrangement with you whereby you would haul him and his ladders whenever he wanted you to? A. He was talking that way, but we didn't make no contract. I said I couldn't be ready all the time for him, because I have got something else to do. I said, 'Maybe, some time, if you need any work, that's what I'm doing.'"

It is impossible to draw any other inference from this testimony than that Mendicino was operating his car at the time of the accident for compensation or hire. They were entire strangers to each other, never having met before, and there is not a single circumstance from which an inference could be drawn that Mendicino or Orcutt contemplated that the work would be performed without charge. Neither is there any significance in the fact that the compensation was not actually paid for the return trip. Orcutt was injured through the negligence of Mendicino and, in place of paying him, brought suit against him to re-

cover damages for the injuries he suffered. Where but a single inference can be drawn from the admitted or established facts, it is for the court and not the jury to draw such inference: Norlund v. Reliance Life Insurance Co., 282 Pa. 389, 391, 128 A. 93.

The provision in the policy that no liability was assumed while the automobile was being operated for the carrying of passengers for a consideration is plain and unambiguous and is a reasonable one. This insurance company had one rate for pleasure vehicles and vehicles operated by the owner for his own use and another higher rate where automobiles were operated for hire, and if the insured desired to embark in the more hazardous business it was his duty to secure a different policy and pay the higher rate.

This case is controlled by the cases of Rykill v. Franklin Fire Ins. Co., 80 Pa. Superior Ct. 492, and Gross v. Kubel, 315 Pa. 396, 172 A. 649. In the Rykill case, there was a similar condition in the policy and the insured operated his car for the carrying of passengers for hire and an accident occurred. It was held that he could not recover. The Gross case was in its facts closely parallel to the case we are considering. There the insured, a member of a basketball team, was using his car for the purpose of transporting the team to another city to engage in a contest and was to be paid an amount equivalent to bus fare, or paid for the cost of oil and gasoline and given, in addition, a small amount for the use of the car. One of the members of the team and also a guest were injured. Neither was permitted to recover, for the reason that the automobile was being operated for the carrying of passengers for hire. Under the undisputed facts in the case we are considering, admitted by the plaintiff himself, the automobile was being operated for the carrying of a passenger for a consideration, contrary to

the express terms of the policy, and consequently there was no liability on the part of the defendant.

In answer to this situation, it was shown that while the accident occurred on November 15, 1930, the company knew about the first of December, 1930, that there *might* be a violation of the policy. Suit was instituted by the plaintiff against Mendicino in the United States District Court for the Northern District of Ohio on February 5, 1931. On February 28, 1931, defendant employed counsel and filed a demurrer to the statement of claim which was dismissed, and on April 15, 1931, Mendicino and the insurance company entered into a written agreement whereby the insurance carrier agreed that it would defend the action against Mendicino, and Mendicino, in turn, agreed that nothing done by the company or its representatives necessary to a defense of the action should be construed as a waiver "of any provision, term, condition, limitation or right in said policy contained."

Appellee relies upon the principles enunciated in Malley v. Amer. Ind. Co., 297 Pa. 216, 146 A. 571; Lewis v. Fidelity & Cas. Co., 304 Pa. 503, 156 A. 73; and Graham v. U. S. Fidelity & Guar. Co., 308 Pa. 534, 162 A. 902, wherein it was held that where an insurance company, under an indemnity policy, takes charge of the defense of an action on which liability rests, it is estopped from thereafter questioning the claim because it was beyond the terms of the policy.

In the late case of Gross v. Kubel, supra, it was definitely settled that the entering of an appearance for an insured by his insurance company does not of itself constitute a waiver of an available defense. It was there said: "The rule to be gathered from the numerous reported decisions upon this subject seems to be that the entry of an appearance for an insured by his insurance company does not of itself constitute a waiver of a defense available to it under the policy

it has issued, but that it is entitled to a reasonable time in which to investigate and determine whether it desires to avail itself of any defense that may be found to exist. If its investigation is conducted with reasonable dispatch and its disclaimer is made with promptness upon the discovery of the facts, it does not lose its defense by the mere entry of an appearance. There can be no final rule for determining whether a company has acted reasonably in this respect. This question must be solved by a consideration of the circumstances of each case.'' In that case there was an interval of seven months before the company disclaimed liability under the policy. Here, the waiver was entered into five months after the accident occurred, about ten weeks after the suit was started, and seven months before the case was actually tried. When the waiver was delivered, the assured knew that the insurance carrier was insisting upon the benefit of the conditions in the policy and specifically agreed in writing that the action of the carrier in defending the suit should not be construed as a waiver. This gave Mendicino ample time to prepare and present his defense by his own counsel if he had so desired.

The insurance company was entitled to a reasonable time to investigate the facts. While in December it knew that there might be a question as to its liability, it was also apparent that both a legal question and questions of fact were involved about which there was serious dispute. During the interim after the accident, it was apparent that the legal position was going to be taken that this was, at best, an isolated case of carrying a passenger for hire and not a practice, and that it would be argued that the policy was not voided on that account. The determination of the legal proposition also involved a question of fact as to whether Mendicino was carrying the passenger for

hire at the precise time of the accident, and a determination of the question would involve testimony not only of Mendicino but of Orcutt whose interests were hostile to both the insurance company and the insured. A slight variation in the statements of the parties might have resulted in a changed status as to their rights and liabilities. The parties themselves, with full knowledge of all these facts, entered into an agreement which they had a right to make and which was not unconscionable or unfair. The very fact that the court below held as it did is evidence of the difficulty that the parties had in knowing their rights at the time. Applying the principles laid down in the Gross case to the case before us, we are of the opinion that the waiver by the insured should be enforced and that there is not sufficient evidence to sustain a conclusion that the insurance company waived its rights by defending the action.

Judgment of the lower court is reversed and here entered for the defendant.